UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Firecom, Inc.

Plaintiff,

v.

MEMORANDUM OPINION
AND ORDER
Civ. No. 00-1376 (MJD/JGL)

Impulse Group, Inc.,

Defendant.

---

David A. Engen, Blackwell, Igbanugo Engen & Saffold, P.A. for and on behalf of Plaintiff.

Larry D. Espel, Greene Espel, P.L.L.P., for and on behalf of Defendant.

---

This matter is before the Court upon Plaintiff's motion for a temporary restraining order.

BACKGROUND

Plaintiff Firecom, Inc. ("Firecom") is a New York corporation that manufactures, sells, installs and services fire alarm systems. Firecom mainly operates in New York, but has offices or subsidiaries in California and Minnesota.

Defendant Impulse Group, Inc. ("Impulse") is a Minnesota corporation. Impulse was intending to submit a bid on the electrical work for the Minneapolis Convention Center Expansion Project. As part of the electric work bid, Impulse and Firecom discussed a subcontract for the fire alarm system. Firecom thereafter prepared and delivered a bid to Impulse. The bid consisted of the quantity and

FILED JUN 08 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD____
DEPUTY CLERK____

description of work to be performed for the Fire/Life Safety system contemplated by the City of Minneapolis.

Impulse received a Letter of Intent from the City of Minneapolis on March 28, 2000 regarding the City's intent to award the electrical bid to Impulse. On March 30, 2000, Impulse sent a Letter of Intent to Firecom to perform the Fire/Life Safety System subcontract portion of the electrical bid. Impulse did not enter into a formal contract with the City, nor receive a Notice to Proceed, until May 1, 2000.

On May 13, 2000, Firecom received a letter from Bloomington Electric Company ("Bloomington Electric") regarding Firecom's ability to satisfy all the requirements necessary to carry out the Fire/Life Safety System for the Convention Center Project. Ward Aff., Ex. H. The letter informed Firecom that Bloomington Electric had been retained as a consultant by Impulse on the fire alarm system. Id. Because of concerns the City had with regard to the present fire alarm system installed in the Convention Center, Bloomington Electric requested that Firecom submit specific documentation to ensure that Firecom was qualified and met all requirements of the City. Id. Bloomington Electric informed Firecom that such documentation must be submitted on or before May 16, 2000.

Thereafter, a series of communications occurred between Firecom and Impulse, as well as between counsel for the parties. In the end, Impulse notified Firecom that it would not enter into a formal agreement with Firecom for the Fire/Life Safety System. Ward Aff., Ex. O. Impulse issued purchase orders to each

of the subcontractors for the project on June 1, 2000. On that date, a purchase order was issued to Siemens to complete the Fire/Life Safety System.

On June 2, 2000, Firecom filed a Petition for Pre-Suit Discovery and a motion for a Temporary Restraining Order. Firecom subsequently filed a Complaint in this matter, and therefore withdraws its petition for pre-suit discovery. Firecom continues to request injunctive relief.

Standard

The Eighth Circuit has established that the following factors are to be used when considering a motion for injunctive relief:

> [W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

Dataphase Sys., Inc. v. C. L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981); accord Medtronic, Inc. v. Gibbons, 527 F. Supp. 1085, 1090 (D. Minn. 1981), aff'd, 684 F.2d 565 (8th Cir. 1982). The standards under Minnesota law are substantially the same, with the added factor of preserving the status quo. Dahlberg Bros., Inc. v. Ford Motor Co., 272 Minn. 264, 275, 137 N.W.2d 314, 321-322 (1965).

Analysis

1. Success on the Merits

In its Complaint, Firecom asserts claims for breach of contract and promissory estoppel, and breach of covenant of good faith and fair dealing.

A. Breach of Contract

Minnesota law provides that generally, a letter of intent constitutes merely an agreement to negotiate in good faith and is not a contract. Hansen v. Phillips Beverage Co., 487 N.W.2d 925, 927 (Minn. Ct. App. 1992). "A letter of intent may be binding if the parties, as a matter of fact, manifest an intent that it be so." Metro Office Parks Company v. Control Data Corporation, 295 Minn. 348, 205 N.W.2d 121 (1973).

Firecom asserts that the express language of the "Letter of Intent" establishes the parties' intent to be bound by such agreement. The Court disagrees. The language of the Letter of Intent clearly expresses that Firecom had to submit additional information prior to the execution of a final contract. In the Documentation section of the document, Firecom had to provide Impulse copies of submittals, certificates of insurance and payment and performance bonds by certain dates. See Ward Aff., Ex. B. There is nothing in the Letter of Intent to suggest that the parties intended to be bound if such documentation was not provided. In addition, at the time Impulse submitted the Letter of Intent to Firecom, it had not entered into a final contract with the City on its bid for the electrical work. Because Impulse did not yet have a contract with the City, it is reasonable to infer that Impulse did not intent to be bound to any subcontractor until it had a binding contract with the City. Accordingly, the Court finds that Firecom has not established a likelihood of success on the merits of its breach of contract claim.

B. Promissory Estoppel

To succeed on a claim of promissory estoppel, Firecom must establish:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Constructors Supply Company v. Bostrom Sheet Metal Works, Inc., 291 Minn. 113, 116, 190 N.W.2d 71, 73 (1971)(quoting Restatement, Contracts, § 90).

The elements of a promissory estoppel claim are 1) a clear and definite promise; 2) the promisor intended to induce reliance and such reliance occurred; and 3) the promise must be enforced to prevent injustice. Ruud v. Great Plains Supply, Inc., 526 N.W.2d 369, 372 (Minn. 1995). Firecom is unlikely to succeed on the merits of this claim as well, as it has failed to submit evidence of a clear and definite promise. The Letter of Intent was not a clear and definite offer. It was merely an acknowledgement to negotiate in good faith. The Court also finds that even if the Letter of Intent is deemed a clear and definite offer, the contract need not be enforced to prevent injustice. As discussed below, Plaintiff would be entitled to damages if successful as to its claims for breach of contract.

C. Covenant of Good Faith and Fair Dealing

Because Firecom has failed to establish success on the merits of its breach of contract claim, Firecom cannot maintain a claim for breach of a covenant of good faith and fair dealing. There is no independent cause of action for this claim.

2. Irreparable Harm

Firecom argues that absent injunctive relief, it will be denied the opportunity to participate in a fair bidding process, it will lose profits and it will be deprived of the prestige in the industry which comes from being competitively selected to provide a fire/life safety system of this magnitude and complexity.

With regard to the first asserted harm, Firecom relies heavily on an opinion from this District, United Technologies Communications Company v. Washington County Board, 624 F.Supp. 185 (D. Minn. 1985). Firecom cites to this case for the proposition that a private party engaged in a bidding process, either public or private, is entitled to participate in a fair bidding process. The holding in United Technologies, that "loss of chance to participate in a fair bidding process raises a significant threat of irreparable injury", is based upon Minnesota law that provides for "public" bidding procedures. Id. at 188.

> It is imperative that public bidding procedures be conducted in a carefully controlled and wholly open manner. To this end the legislature of the State of Minnesota has constructed and enacted into law a detailed code regulating public bidding procedures. MSA 16B, 375.21. The case law strongly supports these procedures. Even the slightest deviations from prescribed form are viewed with a most jaundiced eye.

Id. This case involves a bidding process between private parties. Because such bidding procedures are not governed by Minn. Stat. § 375, United Technologies and all case law concerning public bidding have no relevance here.

Firecom also relies on United Technologies for the proposition that lost profits are not recoverable under Minnesota law, therefore lost profits constitute irreparable injury. Firecom further argues that United Technologies also supports

its position that because it cannot recover lost profits, Firecom should not be denied the opportunity to profit on its contract. Minnesota law does prohibit the recovery of lost profits resulting from violations of the public bidding statutes because "the authority for letting public contracts is derived for the public benefit and is not intended as a direct benefit to the contractor." Telephone Associates, Inc. v. St. Louis County Board, 364 N.W.2d 378, 382 (Minn. 1985). Because this case does not involve the public bidding statute, the reasoning behind the prohibition of lost profits is not applicable to this case.

Because this case involves either a contractual or promissory estoppel dispute between private parties, Firecom would be entitled to damages if successful in its suit. Two cases cited by Firecom in further support of its position that it would suffer irreparable harm, actually support the opposite conclusion. For example, in Ocean Spray Cranberries, Inc. v. Pepsico, Inc., 160 F.3d 58, 61 (1st Cir. 1998), the court stated "the enforcement of contracts by injunction is the exception rather than the rule." The court did acknowledge that injunctive relief requiring performance of a contract may be granted where monetary damages will not afford complete relief, such as the sale of real property or where the damages are impossible to measure accurately. Id. (citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 19 (1st Cir. 1996)). In Ross-Simons, the court determined that where there is substantial injury that is not accurately measurable or adequately compensable, irreparable harm is a natural sequel. Id. at 19.

> Although there is no mechanical test that permits a court to make an exact calculation of the quantum of hard-to-measure harm that will suffice to justify interim injunctive relief, there are some relevant guideposts. In the first place, plaintiff's showing must possess some substance; a preliminary injunction is not warranted by a tenuous or overly speculative forecast of anticipated harm. . . In the second place, an attempt to show irreparable harm cannot be evaluated in a vacuum; the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem. . . Finally, it is clear that battles over the quality and quantity of harm alleged most often will be won or lost in the trial court.

Injunctive relief was granted in Ross-Simons based on the particular facts of that case, which are completely distinguishable from the facts herein. Ross-Simons involved parties that had a working relationship for a number of years, the movant had made a substantial showing of success on the merits, had already printed and distributed a catalogue that advertised the defendant's product when the defendant severed the business relationship, and the losses asserted related to the defendant's product. The court also held that "the focal point of irreparable harm in this case" was the bridal registry. Given the nature of the bridal registry, the court found that "the availability of a product line is as important, if not more important, than the amount of sales generated." Id. at 19-20.

In this case, the parties do not have a prior business history, Firecom has not made a sufficient showing of success on the merits, and the claim of lost prestige is too speculative or tenuous to support relief. As to the claim for lost profits, Minnesota law provides that such damages are recoverable. See eg., Cardinal Consulting Co. v. Circo Resorts, Inc., 297 Minn. 118, 125, 211 N.W.2d 159, 166 (1973); Swanson v. Andrus, 83 Minn. 505, 86 N.W. 465 (1901); Silberstein et al v. Duluth Newstribune Co., 68 Minn. 430, 71 N.W. 622 (1897).

Because the Court has determined that Firecom cannot satisfy two factors relevant to the appropriateness of injunctive relief, it need not address the remaining factors.

Accordingly, IT IS HEREBY ORDERED that Firecom's Motion for a Temporary Restraining Order is DENIED.

Date: 6.7.00

Michael J. Davis
United States District Court